UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KENNETH GEORGE SPIRES,

        Plaintiff,

v.                                    Case No. 8:22-cv-1828-AEP

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,[1]

        Defendant.

_____/

**ORDER**

    Plaintiff seeks judicial review of the denial of his claim for disability insurance benefits ("DIB"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

**I.**

**A.    Procedural Background**

    Plaintiff filed an application for a period of disability, DIB, and SSI (Tr. 178, 179–87, 191–92, 193–94). The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration (Tr. 54, 55–57, 76, 77–79). Plaintiff then requested an administrative hearing (Tr. 108–09). Per Plaintiff's

_____

[1] Dr. Kilolo Kijakazi is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Acting Commissioner Kilolo Kijakazi should be substituted for Commissioner Andrew M. Saul as the defendant in this matter. No further action needs to be taken to continue this matter by reason of the last sentence of section 205(g) of the Social Security Act. 42 U.S.C. § 405(g).

request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 33). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 23). Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

### B.    Factual Background and the ALJ's Decision

Plaintiff, who was born in 1962, claimed disability beginning July 19, 2019 (Tr. 47). Plaintiff obtained a GED (Tr. 219). Plaintiff's past relevant work experience included work as a department supervisor and painter (Tr. 73, 220, 424, 461). Plaintiff alleged disability due to chronic post-thoracotomy pain syndrome, nerve damage, intercostal neuralgia, keloid scar, extreme fatigue, having part of his esophagus and stomach removed, chronic nausea, extreme weight loss, GERD, and depression. (Tr. 47).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2024, and had not engaged in substantial gainful activity since July 19, 2019, the alleged onset date (Tr. 18). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: status post-surgical changes at the gastroesophageal junction with severe spontaneous reflux and weight loss (Tr. 18). Notwithstanding the noted impairments, the ALJ determined Plaintiff

did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 19). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to "perform light work as defined in 20 CFR 404.1567(b) except the claimant can occasionally perform all postural maneuvers, including climbing, balancing, stooping, crouching, kneeling, and crawling." (Tr. 20). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 22).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), the ALJ determined Plaintiff could perform his past relevant work as generally performed and described in the Dictionary of Occupational Titles (Tr. 22–23). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 23).

## II.

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following:  whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (per curiam) (citations omitted).

## III.

Plaintiff argues that the ALJ erred (1) by finding that Plaintiff did not meet or equal the listing found at 20 C.F.R. part 404, subpt. P, App. 2, § 5.08; (2) by failing to meet the requisite standard in evaluating opinion evidence; and (3) by failing to adequately consider Plaintiff's subjective complaints. For the following reasons, the ALJ applied the correct legal standards, and the ALJ's decision is supported by substantial evidence.

### A.    Listing 5.08

Plaintiff argues that the ALJ erred by finding that his illnesses did not meet or equal the listing found at 20 C.F.R. part 404, subpt. P, App. 2, § 5.08. At step three of the sequential evaluation process, the ALJ must determine whether Plaintiff's impairments meet or equal an impairment listed in the Listing. *See* 20 C.F.R. § 404.1520(a)(4)(iii); *see also* 20 C.F.R. pt. 404, subpt. P, app. 1. "The Listings of Impairments describes, for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity." *Wilson*, 284 F.3d at 1224 (citations omitted). The Supreme Court has explained that the level of severity required to meet or equal a Listing is higher than needed to meet or equal the statutory standard for disability. *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). A diagnosis alone cannot meet the criteria required to establish that an impairment meets a Listing. 20 C.F.R. §§ 404.1525(d), 416.925(d).

The claimant bears the burden of proving his impairments meet or equal a Listing. *See Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991). "To 'meet' a

Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement." *Wilson*, 284 F.3d at 1224 (citing 20 C.F.R. § 404.1525(a)–(d)). To show that her impairment matches a listing, a claimant must meet *all* of the specified medical criteria. *Sullivan*, 493 U.S. at 530 (emphasis in original). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* "To 'equal' a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'" *Wilson*, 284 F.3d at 1224 (citing 20 C.F.R. § 404.1526(a)). If the claimant's impairment meets or equals the severity of the specified impairments in the Listing, the claimant is presumptively disabled and entitled to benefits. *Carpenter v. Comm'r of Soc. Sec.*, 614 F. App'x 482, 486 (11th Cir. 2015); *Sullivan*, 493 U.S. at 532.

Here, at step three of the sequential evaluation process, the ALJ concluded that the severity of Plaintiff's impairment did not meet or equal any Listing, specifically § 5.08 (Tr. 20). The ALJ found that while Plaintiff suffered from weight loss due to gastrointestinal disorders, that impairment did not satisfy the requirements of the listing found at § 5.08 (Tr. 19–20). That listing requires:

> 5.08. Weight loss due to any digestive disorder despite continuing treatment as prescribed, with BMI of less than 17.50 calculated on at least two evaluations at least 60 days apart within a consecutive 6-month period.

20 C.F.R. part 404, subpt. P, App. 2, § 5.08. The ALJ acknowledged that Plaintiff was consistently losing weight beginning in 2017 (Tr. 19). The ALJ noted that Plaintiff's BMI even dropped below 17.50 for a period in 2021, which "could

potentially be at listing levels if the claimant were to remain below 17.5 for a period of over six months, despite treatment efforts" (Tr. 19). However, the ALJ recognized that Plaintiff's July 2021 treatment records showed significant weight gain, with an accompanying BMI over 19, indicating that Plaintiff was able to consume necessary calories (Tr. 19, 535). From this, the ALJ reasoned that because Plaintiff was able to consume calories to maintain and gain weight, Plaintiff's associated physical examinations that indicated he was "weak appearing" were unremarkable (Tr. 19, 293–94). Although there were signs of muscle wasting, the ALJ focused on Plaintiff's demonstration of full upper and lower extremity strength, walking with a normal gait, and ability to perform toe and heel walking (Tr. 19–20, 310, 435–36). The ALJ thus concluded that Plaintiff did not meet or equal the listing in § 5.08 (Tr. 20).

Plaintiff argues that the ALJ's decision that Plaintiff does not meet the Listing 5.08 criteria is not supported by substantial evidence. Plaintiff argues that he meets the listing requirements because he had several BMI measurements under 17.50 over a two-year period. Specifically, Plaintiff relies on BMI measurements between October 22, 2020, and April 22, 2021. Plaintiff's first evaluation by agency doctors on October 22, 2020, indicated a BMI of 17.3, based upon his self-reported weight of 104 pounds (Tr. 46). Next, on March 17, 2021, on examination by Dr. Hirschfield, Plaintiff's BMI was 16.64 (Tr. 433). On April 6, 2021, at Plaintiff's appointment with Dr. Reid, he had a BMI of 17.3 (Tr. 466). Finally, Plaintiff had two separate appointments with two different physicians on April 22, 2021 (Tr. 451,

464). In his appointment with Dr. Reid, Plaintiff's BMI was 17.47 (Tr. 464). In his appointment with Dr. Aviles on the same day, Plaintiff's BMI was 17.80 (Tr. 451).

Plaintiff chiefly reasons that if the initial evaluation by agency doctors on October 22, 2020, where he self-reported his weight for the BMI calculation, is included, then he meets the listing at 20 C.F.R. part 404, subpt. P, App. 2, § 5.08. Without a legal definition of what constitutes "an evaluation" in this context from Social Security or the Courts, Plaintiff contends this October BMI measurement qualifies as "an evaluation" based on its plain meaning. Further, Plaintiff notes there is no requirement in the listing that the "evaluation" done for § 5.08 must be based on weight measured in a doctor's office, rather than a self-reported weight. Even still, Plaintiff argues that if it is not found that he meets the Listing 5.08 requirements, then he should be seen as equal to the listing. The Commissioner counters that Plaintiff has not met Listing 5.08 because his critical BMI measurements rely on self-reporting rather than a clinical evaluation. Further, the Commissioner argues that even if the self-reported weight used to calculate Plaintiff's BMI was appropriate, it originated from his application for benefits filed in July 2020, and therefore falls outside of the consecutive six-month window necessary to meet Listing 5.08.

The guiding principle for the ALJ's determination at step three in the sequential evaluation process is if Plaintiff's impairments meet *all* of the specified criteria in a listing. *See Sullivan*, 493 U.S. at 530. Here, the ALJ's conclusion that Plaintiff did not meet or equal all of the criteria in Listing 5.08 is supported by

substantial evidence, and Plaintiff's arguments fail for a few reasons. First, strict compliance with the language of Listing 5.08 supports the ALJ's reasoning to factor in Plaintiff's weight gain recorded in July 2021. Listing 5.08 requires weight *loss* due to any digestive disorder demonstrated by BMI measurements of less than 17.50 on at least two evaluations at least 60 days apart within a consecutive 6-month period. 20 C.F.R. part 404, subpt. P, App. 2, § 5.08. During the period in 2021 where Plaintiff's BMI dropped below 17.5, as recognized by the ALJ, Plaintiff experienced instances of weight gain. On March 17, 2021, Plaintiff weighed 100 pounds (Tr. 433). On April 6, 2021, Plaintiff weighed 104 pounds, gaining four pounds since his March 17th appointment (Tr. 466). On April 22, 2021, Plaintiff weighed 105 pounds, gaining another pound since his April 6th appointment (Tr. 464). Again, on April 22, 2021, Plaintiff weighed 107 pounds and measured a BMI of over 17.50 (Tr. 451). This pattern, eventually culminating in his July 2021 weight of 119 pounds, shows clear signs of weight gain in light of his ongoing treatment rather than weight loss despite such treatment. Although Plaintiff's BMI measurements remained below 17.50 for a considerable period of time, those measurements were not indicative of weight loss, as required by Listing 5.08.

Second, even if the ALJ did err by disregarding the October 2020 BMI calculation, such error is harmless since the ALJ relied on Plaintiff's weight gain over a 6-month period. At the crux of the ALJ's decision to disregard the October 2020 BMI calculation is whether self-reported weight data rather than clinical measurements by a physician is sufficient under Listing 5.08. Plaintiff argues that if

his self-reported weight for the October 2020 BMI calculation is included, then he meets the listing at 20 C.F.R. part 404, subpt. P, App. 2, § 5.08. On the other hand, the Commissioner contends that self-reported measurements are insufficient as an "evaluation" for the purpose of calculating Plaintiff's BMI under Listing 5.08. However, this Court need not decide whether self-reported weight data is sufficient under Listing 5.08 because here, Plaintiff showed a record of weight gain, rather than weight loss, over the designated 6-month period. Further, the final date of the consecutive 6-month period from October 22, 2020, to April 22, 2021, consists of two BMI measurements for Plaintiff, one of which is below 17.50 while the other is above 17.50. Even if the BMI calculation from October 22, 2020, were to be included as desired by Plaintiff, the inconsistency in the BMI measurements on April 22, 2021, within the consecutive 6-month period, leaves room for failure of the Listing 5.08 criteria.

Although Plaintiff presented some evidence demonstrating aspects of Listing 5.08, "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan*, 493 U.S. at 530. Accordingly, the ALJ's decision that Plaintiff's impairments do not meet or equal a listing is supported by substantial evidence.

**B.   Medical Opinion**

Plaintiff argues that the ALJ's evaluation of opinion evidence from Dr. Aviles and Dr. Reid does not meet the requisite standard as set out by the regulations. Dr. Aviles gave two separate opinions about Plaintiff's limitations. In

the first opinion given on September 17, 2020, Dr. Aviles indicated that Plaintiff was capable of low stress work but would be off task for 20% of the workday and would likely miss about 2 days of work per month (Tr. 410–11). On April 22, 2021, Dr. Aviles changed his evaluation of Plaintiff to reflect that he was not capable of low stress work, would be off task for 25% or more of the workday, and would likely miss more than 4 days per month (Tr. 448–49). Plaintiff argues that the ALJ did not treat Dr. Aviles' opinions separately and by not doing so, the ALJ improperly rejected the off task and absenteeism restrictions part of Dr. Aviles' opinions. Plaintiff further argues that the ALJ was required to mention and evaluate Dr. Reid's opinion and failed to do so. Specifically, Plaintiff contends that Dr. Reid's statement that Plaintiff suffered from "chronic pain, chronic weakness fatigue patient does not have the strength to work" was probative of Plaintiff's ability to work, and the ALJ was required sufficiently explain the weight given to it (Tr. 467). The Commissioner counters that Dr. Reid's statement is not an "opinion" within the meaning of the regulations, and therefore, the ALJ was not required to mention or evaluate it.

The ALJ found the medical opinion of Dr. Aviles to be partially persuasive and credited his opinions as supported by a treatment history involving at least two visits (Tr. 21). The ALJ noted that Dr. Aviles found that Plaintiff could perform a range of light work, with occasionally postural maneuvers, and no manipulative limitations (Tr. 21–22). The ALJ also recognized that Dr. Aviles revised his opinions on Plaintiff's off task and absenteeism restrictions between the first and

second evaluation (Tr. 22). In evaluating the opinion evidence of Dr. Aviles, the ALJ concluded that "[w]hile the exertional and postural maneuver limitations are supported by the claimant's status post left thoracotomy and esophagogastrostomy surgeries, with resulting weight loss and acid reflux, the off task and absenteeism restrictions are not consistent with the weight of evidence." (Tr. 22). The ALJ reasoned that Plaintiff has largely benign physical examinations, was able to maintain and gain weight, and reported regular activities of daily living including driving, shopping for groceries, and performance of some household chores (Tr. 22, 237–38, 293–94, 310, 426, 435–36, 464–65, 535).

When assessing the medical evidence, the ALJ may reject any opinion when the evidence supports a contrary conclusion. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (citation omitted). A reviewing court will not second guess an ALJ's decision regarding the weight to afford a medical opinion, so long as the ALJ articulates a specific justification for the decision. *See Hunter v. Soc. Sec. Admin. Comm'r*, 808 F.3d 818, 823 (11th Cir. 2015). Previously, an ALJ was required to afford the testimony of a treating physician substantial or considerable weight unless "good cause" was shown to the contrary. *Winschel*, 631 F.3d at 1179; *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (per curiam) (citation omitted). However, claims filed on or after March 27, 2017, are governed by a new regulation applying a modified standard for the handling of opinions from treating physicians. *See* 20 C.F.R. § 404.1520c; *see also Schink v. Comm'r of Soc Sec.*, 935 F.3d 1245, 1259 n.4 (11th Cir. 2019). The new regulations remove the

"controlling weight" requirement when considering the opinions of treating physicians for applications submitted on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c(a); *Yanes v. Comm'r of Soc. Sec.*, No. 20-14233, 2021 WL 2982084, at *5 n.9 (11th Cir. July 15, 2021). Because Plaintiff submitted her application for benefits on July 29, 2020 (Tr. 178), the new regulation applies.

Under 20 C.F.R. § 404.1520c, an ALJ will not defer or give any specific evidentiary weight to any medical opinion or prior administrative finding, including from a claimant's medical source. 20 C.F.R. § 404.1520c(a). "When a medical source provides one or more medical opinions," those opinions will be considered "together in a single analysis," using the factors listed in 20 C.F.R. § 404.1520c(c)(1) through (c)(5), as appropriate. 20 C.F.R. § 404.1520c(a), (b)(1). These factors are as follows: whether an opinion is well-supported; whether an opinion is consistent with the record; the treatment relationship between the medical source and the claimant; the area of the medical source's specialization; and other factors that tend to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(c)(1)–(5). The ALJ is "not required to articulate how [he/she] considered each medical opinion . . . from one medical source individually." 20 C.F.R. § 404.1520c(b)(1). The primary factors an ALJ will consider when evaluating the persuasiveness of a medical opinion are supportability and consistency. 20 C.F.R. § 404.1520c(a), (b)(2). Specifically, the more a medical source presents objective medical evidence and supporting explanations to support the opinion, the more persuasive the medical opinion will be. 20 C.F.R. §

404.1520c(c)(1). Further, the more consistent the medical opinion is with the evidence from other medical sources and nonmedical sources, the more persuasive the medical opinion will be. 20 C.F.R. § 404.1520c(c)(2). Beyond supportability and consistency, an ALJ may also consider the relationship the medical source maintains with the claimant, including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and whether the medical source examined the claimant, in addition to other factors. 20 C.F.R. § 404.1520c(c)(3)(i)–(v), (c)(5).

As an initial matter, Plaintiff's argument that the ALJ erred by discussing the two opinions of Dr. Aviles as one fails for a few reasons. First, the ALJ recognized that Dr. Aviles provided two separate opinions by stating that the treatment history between Plaintiff and Dr. Aviles "involv[ed] at least two visits" and that Dr. Aviles' opinions about off task and absenteeism restrictions was "later revised" (Tr. 21–22). These statements by the ALJ directly contradict Plaintiff's claim that the ALJ evaluated Dr. Aviles' two separate opinions as one. Second, even if the ALJ discussed Dr. Aviles' two separate opinions as one, that is not an error. Even though Dr. Aviles offered multiple opinions, the new regulations explicitly state: "when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical finding(s) from that medical source together in a single analysis . . . ." 20 C.F.R. § 404.1520c(b)(1). The agency is "not required to articulate how we considered each medical opinion or prior administrative medical finding

from one medical source individually." *Id.* The regulations establish the ALJ was not required to acknowledge and separately analyze each of Dr. Aviles' separate opinions. *See id.*

As to the substance of the ALJ's evaluation and conclusion, substantial evidence supports of the ALJ's consideration Dr. Aviles' medical opinion here. The ALJ credited Dr. Aviles' opinion with regard to his treatment of Plaintiff on at least two separate occasions (Tr. 21, 409). The ALJ noted that Dr. Aviles' opinion addressed complaints surrounding Plaintiff's post left thoracotomy and esophagogastrostomy surgeries, with resulting weight loss and acid reflux (Tr. 22). However, the ALJ found that Dr. Aviles' opinion about Plaintiff's off task and absenteeism restrictions to be inconsistent with the overall record (Tr. 22). The ALJ cited to Plaintiff's largely benign physical examinations, his ability to maintain and gain weight, and his performance of regular activities of daily living (Tr. 22, 237–38, 293–94, 310, 426, 435–36, 464–65, 535). Further, ALJ recognized that Plaintiff's examinations with other providers showed signs of normal strength and range of motion, and a normal gait and balance, as well as no serious deficits in memory, insight, and judgment (Tr. 21–22, 293–94, 310, 425–26, 435–36, 464–65). Therefore, the ALJ cited substantial evidence to support his finding that Dr. Aviles' opinion was partially persuasive as to Plaintiff's off task and absenteeism restrictions.

Lastly, Plaintiff's argument that the ALJ erred by failing to evaluate Dr. Reid's testimony fails under the new regulations. A medical opinion under the

regulations is "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related restrictions." 20 C.F.R. § 404.1513(a)(2). Plaintiff argues the ALJ should have evaluated Dr. Reid's statement that Plaintiff does not have the strength to work (Tr. 467). However, the Eleventh Circuit has held "the task of determining a claimant's [RFC] and ability to work is within the province of the ALJ, not of doctors." *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010). This Court has held before that statements by doctors regarding a claimant's ability to work are not "medical opinions" within the meaning of the regulations, and the ALJ is not required to analyze or place value in such statements. *See* 20 C.F.R. § 404.1520b(c)(3)(i); *Dye v. Comm'r of Soc. Sec.*, No. 5:20-cv-459-NPM, 2022 WL 970186, at *4–5 (M.D. Fla. Mar. 31, 2022) (finding that the ALJ was no required to provide analysis of statements such as claimant is "unable to resume any type of gainful employment," "unable to work on a sustained basis," and that the claimant's "symptoms will significantly and consistently interfere with work performance and attendance"); *Cianfrani v. Comm'r of Soc. Sec.*, No. 2:20-cv-24-FtM-MRM, 2021 WL 973494, at *4 (M.D. Fla. Mar. 16, 2021) (finding that "the ALJ was not required to place any value in Dr. Lovett's assertion that Plaintiff could not return to work"). Here, Dr. Reid's statement that Plaintiff does not have the strength to work is not a medical opinion within the meaning of the regulations, and the ALJ was not required to provide analysis on how the statement was considered. Accordingly, substantial

evidence supports the ALJ's findings with respect to the medical opinions about Plaintiff.

### C.     Subjective Complaints

Plaintiff argues that the ALJ's consideration of his subjective complaints of fatigue and weakness, muscle wasting, and cachexia is not supported by substantial evidence. The Commissioner responds that substantial evidence supports the ALJ's evaluation of Plaintiff's subjective complaints, and that Plaintiff is essentially asking this Court to reweigh the evidence.

At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545, 416.920(a)(4)(iv), 416.945. To determine a claimant's RFC, the ALJ makes an assessment based on all the relevant evidence of record as to what a claimant can do in a work setting despite any physical or mental limitations caused by the claimant's impairments and related symptoms. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In rendering the RFC, therefore, the ALJ must consider the medical opinions in conjunction with all the other evidence of record and will consider all the medically determinable impairments, including impairments that are not severe, and the total limiting effects of each. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(2), 404.1545(e), 416.920(e), 416.945(a)(2), 416.945(e); *see Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (stating that the "ALJ must consider the applicant's medical condition taken as a whole"). In doing so, the ALJ considers evidence such as the claimant's medical history; medical signs and

laboratory findings; medical source statements; daily activities; evidence from attempts to work; lay evidence; recorded observations; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; the type, dosage, effectiveness, and side effects of any medication or other treatment the claimant takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; any measures the claimant uses or has used to relieve pain or symptoms; and any other factors concerning the claimant's functional limitations and restrictions. 20 C.F.R. §§ 404.1529(c)(3)(i)–(vii), 404.1545(a)(3), 416.929(c)(3)(i)–(vii), 416.945(a)(3); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996); SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017).

As indicated, in addition to the objective evidence of record, the ALJ must consider all the claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective evidence and other evidence.[2] *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p, 2017 WL 5180304, at *2. However, a claimant's statement as to pain or other symptoms shall not alone be conclusive evidence of disability. 42 U.S.C. § 423(d)(5)(A). To establish a

---

[2] The regulations define "objective evidence" to include evidence obtained from the application of medically acceptable clinical diagnostic techniques and laboratory findings. 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). Additionally, the regulations define "other evidence" to include evidence from medical sources, non-medical sources, and statements regarding a claimant's pain or other symptoms, including about treatment the claimant has received. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Moreover, the regulations define "symptoms" as a claimant's own description of his or her physical or mental impairment. 20 C.F.R. §§ 404.1502(i), 416.902(n).

disability based on testimony of pain and other symptoms, the claimant must show evidence of an underlying medical condition and either (1) objective medical evidence confirming the severity of the alleged symptoms or (2) that the objectively determined medical condition can reasonably be expected to give rise to the alleged symptoms. *Wilson*, 284 F.3d at 1225 (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see* 20 C.F.R. §§ 404.1529, 416.929. Consideration of a claimant's symptoms thus involves a two-step process, wherein the ALJ first considers whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the claimant's symptoms, such as pain. 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR 16-3p, 2017 WL 5180304, at *3-9. If the ALJ determines that an underlying physical or mental impairment could reasonably be expected to produce the claimant's symptoms, the ALJ evaluates the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit the claimant's ability to perform work-related activities. 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 16-3p, 2017 WL 5180304, at *3–9. When the ALJ discredits the claimant's subjective complaints, the ALJ must articulate explicit and adequate reasons for doing so. *Wilson*, 284 F.3d at 1225 (citation omitted). A reviewing court will not disturb a clearly articulated finding regarding a claimant's subjective complaints supported by substantial evidence in the record. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014); *see Foote v. Chater,* 67 F.3d 1553, 1562 (11th Cir. 1995) (per curiam) (citation omitted).

Here, Plaintiff complained that he stopped working largely due to GERD, extreme weight loss, nerve damage, chronic post-thoracotomy pain syndrome, and complications from his surgery in which part of his esophagus and stomach were removed (Tr. 20, 218). Plaintiff also complained of severe nausea, stomach aches, and regular vomiting (Tr. 20, 33–35, 41, 235). Because of these impairments, Plaintiff alleged difficulties with eating and performing all exertional, postural, and manipulative activities, including needing to rest after walking one block (Tr. 20, 38, 40–41, 235, 240). Plaintiff argues that the ALJ did not adequately consider all of the medical evidence available regarding Plaintiff's severe weight loss. Further, Plaintiff argues that Dr. Hirschfield's examination does not support the ALJ's finding that Plaintiff is capable of light work.

The ALJ found that Plaintiff had the RFC to perform "light work as defined in 20 CFR 404.1567(b) except the claimant can occasionally perform all postural maneuvers, including climbing, balancing, stooping, crouching, kneeling, and crawling" (Tr. 20). The ALJ further found that Plaintiff could perform his past relevant work as a painting department supervisor, not as he performed it, but as it is generally performed and described in the Dictionary of Occupational Titles (Tr. 22–23). In support of this conclusion, the ALJ ultimately determined that while Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" (Tr. 20).

In his evaluation, the ALJ compared Plaintiff's complaints with the evidence in the record and noted the inconsistencies (Tr. 19–22). Contrary to Plaintiff's argument, the ALJ did not "cherry-pick" facts to support a finding that Plaintiff was not disabled while ignoring evidence that points to a disability finding. Rather, the ALJ noted the extensive medical record and recognized that although some findings lean in favor of establishing disability, Plaintiff's subjective complaints were not entirely supported by the evidence (Tr. 20–21, 288–92, 293, 300, 337). The ALJ detailed that Plaintiff had lost weight at times in 2017 and 2020, but that Plaintiff's recent records show that he was able to gain and maintain weight in 2021 (Tr. 21, 535). The ALJ also contrasted Plaintiff's examinations in March and April 2021 that showed signs of weakness and muscle wasting with Plaintiff's concurrent demonstration of full upper and lower extremity strength, including toe and heel walking with a normal gait, as detailed in Dr. Hirschfield's report (Tr. 21, 310, 435–36). Additionally, Plaintiff's ability to perform daily activities factored into the ALJ's analysis of Plaintiff's subjective complaints (Tr. 21–22). While Plaintiff initially complained he was not able to consume enough calories to perform basic exertional activities, Plaintiff also reported that he could drive, shop for groceries, and complete household chores (Tr. 22, 237–38). Later, however, Plaintiff's examination showed that he did have difficulties with driving, shopping, and household chores (Tr. 461). The ALJ did not err by considering these inconsistencies when analyzing Plaintiff's subjective complaints. *See* 20 C.F.R. §

404.1529(c)(4). Accordingly, the ALJ's consideration of Plaintiff's subjective complaints is supported by substantial evidence.

## IV.

The Court finds the ALJ's decision that Plaintiff does not meet the Listing 5.08 criteria is supported by substantial evidence. Further, the ALJ's evaluation of opinion evidence and consideration of Plaintiff's subjective complaints were supported by substantial evidence. As outlined above, the ALJ specifically considered whether Plaintiff met the Listing 5.08 criteria. The ALJ then supported his reasoning with record evidence. The ALJ also adequately considered and explained all of the appropriate medical opinion evidence and Plaintiff's subjective complaints. The task of this Court is not to reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Winschel*, 631 F.3d at 1178. The Court may only consider whether the ALJ's decision is supported by substantial evidence, which it is here.

Accordingly, after consideration, it is hereby

ORDERED:

1.  The decision of the Commissioner is AFFIRMED.

2.  The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

DONE AND ORDERED in Tampa, Florida, on this 14th day of September, 2023.

ANTHONY E. PORCELLI
United States Magistrate Judge

cc:  Counsel of Record